NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PETR STRANSKY,

    Plaintiff,

v.

PENNYMAC HOLDINGS, LLC, et al.,

    Defendants.

Civil Action No. 18-15929 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon two motions: Defendants Powers Kirn, LLC ("Powers Kirn"), Michael P. McNeil ("McNeil"), Sarah E. Powers ("Powers"), and Frances M. Kelly's ("Kelly") (collectively, "Powers Kirn Defendants") Motion to Dismiss (ECF No. 18); and PennyMac Holdings, LLC ("PennyMac"), Lauren E. O'Donnell, ("O'Donnell"), Blank Rome LLP ("Blank Rome"), and Michael P. Trainor's ("Trainor") (collectively, "PennyMac Defendants") Motion to Dismiss (ECF No. 20). Plaintiff Petr Stransky ("Plaintiff") opposed both motions in one brief (ECF No. 30), and Powers Kirn Defendants and PennyMac Defendants separately replied (ECF Nos. 31, 32). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Powers Kirn Defendants' and PennyMac Defendants' Motions to Dismiss.

## I. BACKGROUND[1]

Plaintiff owns Lots 28 and 29 in Howell, New Jersey. (Am. Compl. ¶ 12, ECF No. 9.) On March 3, 2006, Peter Stransky[2] executed a promissory note and mortgage (the "Note") to Mortgage Electronic Registration Systems, Inc. ("MERS") for <u>only</u> Lot 29. (*Id.* ¶¶ 13, 20 (emphasis added).) The Note was assigned twice. (*Id.* ¶ 15.) On October 19, 2011, the mortgage was assigned to JPMC Specialty Mortgage, LLC ("JPMC"). (*Id.*) On August 15, 2013, Plaintiff filed for bankruptcy, and his bankruptcy filing only addressed Lot 29. (*Id.* ¶ 16.) Plaintiff's bankruptcy was discharged on November 27, 2013. (*Id.* ¶ 17.) The Note was assigned again on January 10, 2014 to PennyMac. (*Id.* ¶ 18.)

On March 12, 2014, Powers Kirn filed a civil action (the "Foreclosure Action") in New Jersey Superior Court on behalf of PennyMac in order to foreclose on the Note. (*Id.* ¶ 20.) The Complaint included a Certification of Diligent Inquiry signed by McNeil. (*Id.* ¶ 21.) Through Powers Kirn, PennyMac filed a notice of *lis pendens* on March 18, 2014, notifying Plaintiff of the pendency of the Foreclosure Action. (*Id.* ¶ 22.) Plaintiff alleges Lot 28 was never mortgaged through MERS or assigned to JPMC or PennyMac. (*Id.* ¶ 23.) Plaintiff also alleges PennyMac

---

[1] For the purpose of this motion to dismiss, the Court accepts as true all well-pled facts in the Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Petr Stransky is the named Plaintiff in this matter. The Amended Complaint, however, references a "Peter Stranksy" without clarifying whether Petr and Peter are the same person or the relationship between Petr and Peter. (*See* Am. Compl. ¶ 12.) The Court notes that Plaintiff references an appeal filed by Petr and a decision on that appeal rendered by the New Jersey Superior Court, Appellate Division, on March 29, 2018. (*Id.* ¶¶ 21, 30.) PennyMac Defendants attached a copy of that decision as an exhibit to their motion. (*See* PennyMac Defs.' Mot. to Dismiss, Ex. D (the "Appellate Division Opinion"), ECF No. 20-6.) That decision explains that the Appellant's "first name is spelled 'Petr.' His illegible signature on the [N]ote [documents] appear above the typewritten name, 'Peter' Stransky." (*Id.* at 2 n.1.) For the purposes of deciding the instant motions, the Court assumes Petr and Peter are the same person. If Plaintiff files a second amended complaint, Plaintiff must clarify the relationship between Petr and Peter.

litigated the Foreclosure Action as if it encompassed Lot 28 and Lot 29 despite knowing Lot 28 was not included in the Note. (*Id.* ¶ 24.)

On August 14, 2015, the Honorable Paul Innes, P.J.Ch., granted PennyMac a final judgment in the sum of $434,709.74, which foreclosed on both Lots 28 and 29. (*Id.* ¶ 26.) The Clerk of Superior Court issued a Writ of Execution the same day, ordering the Monmouth County Sheriff to sell the premises to pay the final judgment. (*Id.* ¶ 27.) The Writ of Execution applied to Lot 28 and Lot 29. (*Id.*) The Monmouth County Sheriff issued a sale notice of foreclosure listing both lots to be sold. (*Id.* ¶ 29.)

On November 20, 2015, Blank Rome appeared as counsel for PennyMac in the Foreclosure Action. (*Id.* ¶ 28.) Plaintiff appealed Judge Innes's final judgment to the New Jersey Superior Court, Appellate Division (the "Appellate Division"). (*Id.* ¶ 30; *See* Appellate Decision Op.; *see also PennyMac Holdings, LLC v. Stransky*, No. A-0504-15T2, 2018 WL 1526103, at *1 (N.J. Super. Ct. App. Div. Mar. 29, 2018) ("Defendant Peter Stransky appeals from a September 5, 2014 order entering summary judgment and an August 14, 2015 final judgment.").)[3] Plaintiff alleges the "Appellate Division vacated the Final Judgment because the Defendants had sought to foreclose on Lot 28 even though Lot 28 was never part of any mortgage." (Am. Compl. ¶ 31.) The Appellate Division wrote:

> With one exception, we find defendant's arguments devoid of sufficient merit to warrant discussion in a written opinion. . . . The exception is the variance in the lot numbers between the mortgage

---

[3] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. . . . However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (alteration in original) (internal citations and quotation marks omitted). The Court, accordingly, considers the Appellate Division's decision in *PennyMac Holdings, LLC* because Plaintiff explicitly relies upon it in his Complaint. (*See* Am. Compl. ¶¶ 30, 31.)

3

and the final foreclosure judgment. The mortgage refers only to Lot 29; the final judgment refers to Lots 28 and 29. Although the legal description is consistent in the mortgage and final judgment, we cannot determine from the appellate record whether the legal description is that of Lot 28 or both Lots 28 and 29.

*PennyMac Holdings, LLC*, 2018 WL 1526103, at *3 (citation omitted). The Appellate Division remanded the matter with instructions to resolve the discrepancy between the mortgage and the final foreclosure judgment. *Id.*

On October 8, 2018, Plaintiff filed a five-count complaint against Defendants in New Jersey Superior Court, Monmouth County, Law Division. (Notice of Removal ¶ 1, ECF No. 1.) On November 8, 2018, Blank Rome and PennyMac removed the action to this Court. (*See generally* Notice of Removal.) On January 9, 2019, Plaintiff filed the instant Amended Complaint, and, on January 21, 2019, filed a Motion to Amend. (Pl.'s Mot. to Amend, ECF No. 11.)

On January 25, 2019, Howell Township filed a Motion to Intervene to "protect its interest in maintaining the integrity of the subdivision approval process[,]" and arguing that Plaintiff illegally subdivided his property. (Mot. to Intervene 1, ECF No. 14-1.) On January 30, 2019, in light of Plaintiff's Amended Complaint, which is now the Operative Complaint, the Court terminated Powers Kirn's Motion to Dismiss. (Order, ECF No. 15.)

Plaintiff alleges that from 2014 to 2018, "Defendants"[4] sent him at least twenty monthly statements attempting to collect on the debt owed for Lot 28. (Am. Compl. ¶ 59.) Plaintiff brings five causes of action against Defendants: (1) fraud; (2) breach of implied covenant of good faith and fair dealing; (3) malicious prosecution; (4) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e) *et seq.*; and (5) intentional infliction of emotional distress.

---

[4] Plaintiff defines "Defendants" to include Powers Kirn Defendants and PennyMac Defendants. (Am. Compl. at 1.) The Court also refers to Powers Kirn Defendants and Penny Mac Defendants collectively as "Defendants."

4

(*Id.* ¶¶ 35-71.) Plaintiff claims "Defendants violated the FDCPA [by] . . . [f]alsely representing the amount of debt owed by Plaintiff . . . by sending monthly statements to collect on debt owed on Lot 28" and by "using false representations and deceptive means in attempts to collect on Plaintiff's debt". (*Id.* ¶ 59.)

On February 1, 2019, Powers Kirn Defendants filed the instant motion, arguing Plaintiff failed to state a claim and that the Court lacks jurisdiction. (*See* Powers Kirn Defs.' Mot. to Dismiss ("PKMTD"), ECF No. 18.) On February 6, 2019, PennyMac Defendants also moved to dismiss, advancing many of the same arguments as Powers Kirn Defendants. (*Compare id.*, *with* PennyMac Defs.' Mot. to Dismiss ("PMMTD"), ECF No. 20.) Plaintiff filed a single opposition brief to both motions to dismiss. (Pl.'s Opp'n Br., ECF No. 30.) On March 5, 2019, Defendants separately replied. (PennyMac Defs.' Reply Br., ECF No. 31; Powers Kirn Defs.' Reply Br., ECF No. 32.)

## II. LEGAL STANDARD

A district court must conduct a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court must take note of the elements a plaintiff must plead to state a claim; review the complaint to strike conclusory allegations; and accept as true all of the plaintiff's well-pled factual allegations while "constru[ing] the complaint in the light most favorable to the plaintiff." *Id.*; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In accepting the plaintiff's factual allegations, the court may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the Court

---

[5] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

5

must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. DISCUSSION

Defendants advance numerous arguments in support of their respective Motions to Dismiss. (*See generally* PMMTD; PKMTD.) Despite the abundance of arguments, the Court limits its analysis to Defendants' arguments related to Plaintiff's FDCPA claims because they appear to be dispositive of the Court's subject matter jurisdiction.

When Blank Rome and PennyMac removed the action from New Jersey Superior Court, they alleged that the Court had subject matter jurisdiction pursuant to "28 U.S.C. § 1331 [("Section 1331")], and [that the matter] . . . may be removed . . . pursuant to the provision of 28 U.S.C. § 1441(a) because Count IV of the Complaint alleges violations against all named defendants under the" FDCPA. (Notice of Removal ¶ 5.) Blank Rome and PennyMac also invoked the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (*Id.* ¶ 6.) Plaintiff's Amended Complaint does not address the Court's subject matter jurisdiction. (*See generally* Am. Compl.)

Section 1331 provides the Court with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court, accordingly, has original jurisdiction over this matter because the FDCPA is a law of the United States.

When a district court has dismissed all claims over which it had original jurisdiction, the Court has the discretion to decline to exercise jurisdiction over the remaining state law claims. *See*

28 U.S.C. § 1367(c) ("[t]he [Court] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . [it] has dismissed all claims over which it has original jurisdiction. . . .") The Third Circuit has advised that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must decline</u> to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added) (citations omitted). Thus, if Plaintiff's FDCPA claims are dismissed with prejudice, the Court will have to address whether to exercise supplemental jurisdiction over Plaintiff's state law claims. While the Court does not reach the supplemental jurisdiction analysis at this juncture, the Court notes that the wealth of arguments Defendants advance in support of their respective motions strongly suggest that the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims.

### A. **The Parties' Positions**

PennyMac Defendants advance two arguments targeting Plaintiff's FDCPA claims. (PMMTD 24-26.) First, PennyMac Defendants argue that Plaintiff's FDCPA claims are barred by the FDCPA's one-year statute of limitations. (*Id.* at 24.) PennyMac Defendants highlight a potential discrepancy in Plaintiff's facts. (*Id.*) Per PennyMac Defendants, Plaintiff asserts PennyMac Defendants "sought to collect a debt on Lot 28 by sending monthly statements from 2014 through 2018[,] [b]ut the Writ of Execution, which referenced Lot 28, was initially filed with the Final Judgment on August 14, 2015." (*Id.*) As a result, PennyMac Defendants argue any claim arising from the reference to Lot 28 in the Foreclosure Action expired in 2016. (*Id.*) PennyMac Defendants also argue that the monthly statements sent to Plaintiff from 2014 to 2018 were not continuing violations of the FDCPA because they were new communications concerning an old

7

claim, which do not start a new period of limitations. (*Id.* (citing *Hua v. PHH Mortg.*, No. 14-7821, 2015 WL 5722610, at *4 (D.N.J. Sept. 29, 2015)).) PennyMac Defendants' second argument is that Blank Rome, O'Donnell, and Trainor are not "debt collectors" as defined in the FDCPA. (*Id.* at 25.)

Powers Kirn Defendants argue Plaintiff's FDCPA claims should be dismissed for similar reasons as the PennyMac Defendants. (PKMTD 11-13.) Specifically, Powers Kirn Defendants argue:

> Plaintiff's amended complaint alleges that liability under the [FDCPA] is rooted in the fact that the Foreclosure Action contained a reference to Lot 28 and [Plaintiff] is suggesting that any deviation in the description of the land covered by the [Note] gives rise to liability starting from the filing of [the] Foreclosure Action complaint and going forward infinitely into the future.

(*Id.* at 12.) Powers Kirn Defendants claim that because the Foreclosure Action commenced on March 12, 2014, any liability under the FDCPA expired on March 12, 2015. (*Id.* at 12-13.)

Plaintiff agrees that the FDCPA sets a one-year statute of limitations but contends that his claims are not time-barred. (Pl.'s Opp'n Br. 5-7.) Plaintiff argues that Defendants' actions violating the FDCPA were independent of the Foreclosure Action and continued through 2018. (*Id.* at 7.) Plaintiff clarifies that the actions constituting FDCPA violations were the twenty monthly statements Defendants sent to Plaintiff beginning in 2014 and continuing until 2018. (*Id.*) Plaintiff cites to *Brown v. Urden Law Offices PC*, No. 11-2697, 2011 WL 4011411 (E.D. Pa. Sept. 9, 2011), and *Jones v. Investment Retrievers, LLC*, No 10-1714, 2011 WL 1565851 (M.D. Pa. Apr. 25, 2011), in support of his argument that Defendants' FDCPA violations were independent of the Foreclosure Action.

8

B.  **Plaintiff Failed to State a FDCPA Claim**

A plaintiff bringing a FDCPA claim must establish that "(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018)). As explained below, the Court finds that Plaintiff has failed to state a claim for a FDCPA violation for two independent reasons.

1.  **Plaintiff Failed to Establish that Defendants are Debt Collectors**

The FDCPA defines a "debt collector" as any person:

> [(1)] [W]ho uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [(2)] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).[6] Here, Plaintiff alleges no facts to support a claim that any of Defendants' "principal purpose" is the collection of debts, nor does Plaintiff allege facts to support a claim that any of the Defendants "regularly collects or attempts to collect" debts. Plaintiff, instead, alleges that "PennyMac and its representatives, Powers Kirn and Blank Rome, are precisely the sort of debt-collector Congress intended for consumers to be protected against by the FDCPA." (Am. Compl. ¶ 58.) This statement is the type of legal conclusion the Court may ignore, especially when Plaintiff advances no facts to support the conclusion. *Iqbal*, 556 U.S. at 678. The Court,

---

[6] The FDCPA also includes two alternate definitions of a "debt collector" that do not appear to be applicable in this instance. *See* 15 U.S.C. 1692a(6).

accordingly, finds Plaintiff failed to adequately plead that Defendants are "debt collectors" within the meaning of the FDCPA.[7]

### 2. Plaintiff's FDCPA Claims Do Not Satisfy Rule 8

Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A motion to dismiss under Rule 12(b)(6) may be granted if a court concludes the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Courts in this district have held "group pleading" does not satisfy Rule 8 because it does not place the defendants on notice of the claims against them. *See e.g.*, *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (explaining that group pleading fails to put defendants on notice).

Here, Plaintiff alleges that Defendants violated the FDCPA, but Plaintiff does not specify which defendants sent the statements that allegedly violated the FDCPA. When the Court accepts as true Plaintiff's claim that all of the Defendants were responsible for the monthly statements, Plaintiff's claim becomes implausible based on Plaintiff's other allegations. For example, Plaintiff alleges that Blank Rome's involvement in the facts giving rise to this suit began in November 2015. (Am. Compl. ¶ 28.) Thus, it is implausible that Blank Rome was responsible for the monthly statements in 2014.

### 3. Defendants Have Not Established that Plaintiff's FDCPA Claims are Barred by the Statute of Limitations

"A statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015). A statute of

---

[7] Because briefing on the instant motions finished fifteen days prior to the Supreme Court's decision in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), the parties did not have the opportunity to brief the impact of the holding in that matter on Plaintiff's claims. The Court, accordingly, does not comment on what impact, if any, *Obduskey* has on Plaintiff's claims.

limitations defense can also be raised via a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). The Court may only grant the instant motion "if the face of the complaint demonstrates that the plaintiff's claims are untimely." *Id.*

The FDCPA imposes a one-year statute of limitations on claims arising from violations of the statute.[8] 15 U.S.C. § 1692k(d) (providing that "[a]n action to enforce liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."). The Court, accordingly, may only grant Defendants' motions on the basis of the FDCPA's statute of limitations if the face of the Complaint demonstrates that Plaintiff's FDCPA claims arose prior to October 8, 2017.

Plaintiff alleges that Defendants violated 15 U.S.C. § 1692(e)(2)(A) by "[f]alsely representing the amount of debt owed by Plaintiff . . . by sending monthly statements to collect on debt owed on Lot 28[.]" (Am. Compl. ¶ 59.) Plaintiff also alleges that Defendants violated 15 U.S.C. § 1692(e)(10) by "using false representations and deceptive means in attempts to collect on Plaintiff's debt." (*Id.*) Defendants construe Plaintiff's FDCPA claims to be inextricably linked to the Foreclosure Action such that the statute of limitations began to run on March 12, 2014 (when the Foreclosure Action was initiated) or on August 14, 2015 (when the Writ of Execution was filed

---

[8] When an FDCPA claim is premised upon allegations of improper pursuit of debt collection litigation, Courts are split as to when the statute of limitations begins to run. *Schaffhauser v. Citibank (S.D.) N.A.*, 240 F. App'x 128, 130 (3d Cir. 2009). The Third Circuit has acknowledged a circuit split as to when the FDCPA's statute of limitations begins to run: some have held claims accrue upon the filing of the underlying litigation action, *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), whereas others use the date when the debtor was served with the complaint, *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002). *Schaffhauser*, 340 F. App'x at 130-31. In this case, the method adopted does not change the outcome.

11

in the Foreclosure Action). Thus, per Defendants, Plaintiff's FDCPA claims are barred by the FDCPA's statute of limitations because the one-year period expired in 2015 or 2016.

Defendants' positions appear to have merit because when an alleged FDCPA violation is based on actions arising out of a lawsuit to collect a debt, the violation "occurs either on the date the lawsuit is filed . . . or on the date that the complaint is served upon the plaintiff." *Schaffhauser v. Burton Neil & Assocs.*, No. 05-02075, 2008 WL 857523, at *2 (M.D. Pa. Mar. 27, 2008), *aff'd sub nom.*, *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128 (3d Cir. 2009); *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 338 (D.N.J. 2009). "The course of litigation is not, in itself, a 'continuing violation' of the FDCPA[,]" and "new communications concerning an old claim do not start a new limitations period." *Parker*, 650 F. Supp. 2d at 341 (quoting *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000)) (internal alterations omitted).

On the other hand, Plaintiff argues that Defendants' conduct in violation of the FDCPA is distinct from the Foreclosure Action and continued until 2018. When Plaintiff's allegations are viewed through this lens, Plaintiff's allegations would satisfy the principle that "[c]onduct which independently violates the FDCPA . . . is actionable if it falls within the limitations period, even if undertaken in pursuit of litigation that was filed outside the limitations period." *Brown v. Udren Law Offices PC*, No. 11-2697, 2011 WL 4011411, at *6 (E.D. Pa. Sept. 9, 2011) (emphasis added). Put another way, to the extent Plaintiff's FDCPA claims are based on Defendants sending Plaintiff monthly statements that are unrelated to the Foreclosure Action, the statements that Defendants sent within one year prior to the initiation of the instant action may not be barred by the FDCPA's statute of limitations. The Amended Complaint does not indicate which of the approximately twenty statements were sent after October 8, 2017. The Court, nevertheless, can infer that at least

one statement was sent after that date because Plaintiff alleges that monthly statements were sent in 2018.

Plaintiff's view of the case, however, is challenged by Plaintiff's allegations that Defendants' actions "resulted in Plaintiff incurring numerous costs, and having property not mortgaged through [Defendants] listed in a Public Sheriff Sale and [Plaintiff being] threatened with the immediate loss of his property." (Am. Compl. ¶ 60.) By linking the alleged harm arising from the Foreclosure Action, Plaintiff undermines his position that the monthly statements were independent from that litigation and should be treated as such for statute of limitations purposes. Ultimately, because the Court cannot conclude that the face of the Complaint demonstrates that Plaintiff's FDCPA claims are barred by the statute of limitations, the Court cannot find that Plaintiff's FDCPA claims are subject to dismissal on those grounds.

## IV. CONCLUSION

In sum, the Court finds that Plaintiff's FDCPA claims fail because (1) Plaintiff has not adequately alleged that Defendants are "debt collectors" and (2) Plaintiff failed to satisfy Rule 8. The Court does not reach Defendants' remaining arguments for dismissal or address the merits of Plaintiff's state law claims. The Court, accordingly, grants Powers Kirn Defendants' and PennyMac Defendants' Motions to Dismiss. Because Plaintiff may be able to address the pleading deficiencies identified or the reasons set forth above, the Court grants Plaintiff leave to amend. An order consistent with this opinion will be entered.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2019